**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0115-19T2

TIMOTHY MAHONEY,

    Plaintiff-Appellant,

v.

UNION PAVING & CONSTRUCTION
COMPANY, INC.,

    Defendant/Third-Party
    Plaintiff-Respondent,

v.

DMJ INDUSTRIAL SERVICES,
LLC and LEADING EDGE SAFETY
& HEALTH, LLC,

    Third-Party Defendants.

_____

Argued telephonically August 4, 2020 -
Decided August 26, 2020

Before Judges Rothstadt and Firko.

On appeal from the Superior Court of New Jersey, Law
Division, Hudson County, Docket No. L-0433-17.

Douglas D. Burgess argued the cause for appellant (Icaza, Burgess & Grossman, PC, attorneys; Douglas D. Burgess, of counsel; Randi S. Greenberg, on the brief).

Adam J. Adrignolo argued the cause for respondent (McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys; Adam J. Adrignolo, of counsel and on the brief; Francis W. Yook, on the brief).

PER CURIAM

Plaintiff Timothy Mahoney appeals from an August 2, 2019 order granting summary judgment in favor of defendant Union Paving and Construction Company, Inc. (Union Paving). We affirm.

I.

In reviewing the grant of a motion for summary judgment, we "must accept as true all the evidence which supports the position of the party defending against the motion and must accord [that party] the benefit of all legitimate inferences which can be deduced therefrom." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (citations omitted). Accordingly, we relate the facts as admitted by the parties and as proffered by plaintiff, based upon the deposition testimony and other documentary evidence, including his expert's report.

On January 15, 2016, plaintiff, a journeyman ironworker and union member, was injured on a construction site in Bayonne when a steel enforcement

cage used to support concrete pillars rolled onto him. At the time of his accident, plaintiff was employed by DMJ Industrial Services (DMJ), an ironworking subcontractor. Union Paving was the general contractor overseeing the project.

On April 2, 2015, Union Paving and DMJ executed a subcontract for the project, which identified Union Paving as the contractor; DMJ as the subcontractor; and the New Jersey Turnpike Authority as the owner. The project entailed construction of ramps and bridges in order to alleviate traffic at Interchange 14A. According to the subcontract, DMJ's scope of work included rebar installation and caisson frame assembly. Plaintiff testified that a caisson frame is used to support a highway exit or entry ramp and he had worked on such frames in the past.

In pertinent part, the subcontract states that DMJ "has investigated the nature, locality and site of the [s]ubcontract [w]ork and the conditions and difficulties, if any, under which [the work] is to be performed, and assumes all risks therefrom." DMJ executed the subcontract "on the basis of its own examination, investigation and evaluation . . . ."

The subcontract obligated DMJ to furnish all materials, equipment, tools, labor and competent supervision in the performance of its duties. DMJ was required to "keep the building and premises free from . . . unsafe conditions

resulting from the [s]ubcontractor's [w]ork . . . ." The terms of the subcontract delegated all rebar installation and caisson frame assembly work to DMJ.

On January 13, 2016, DMJ commenced work on the project. Two days later, plaintiff, along with other DMJ workers and DMJ's foreman, Jeff Coggins, assembled a cylindrical caisson frame and attached steel rebar to the frame. The caisson is covered with concrete and reinforces a concrete pillar buttressing a highway extension. At his deposition, plaintiff described the method of adding support to wedge an object and prevent it from rolling as the "chocking method." Coggins testified at his deposition that the chocking method was the standard practice for assembly of the caisson and comported with safety protocols.

Coggins, a seasoned ironworker, instructed plaintiff and DMJ employees on installation of the caisson frame on the date of the accident. After unloading the caissons from a flatbed truck, Coggins directed plaintiff and DMJ employees to move them using a shackle, strap, and choker. The frame became top heavy and rolled resulting in plaintiff's injuries. Plaintiff testified there was no discussion about implementing a dunnage[1] safety precaution even though the requisite materials were available at the jobsite.

---

[1] Plaintiff described dunnage as typically consisting of a piece of wooden board.

A-0115-19T2

Travis Carey, a Union Paving project manager, testified that DMJ was responsible for assembly of the frames and Union Paving had no foreman present. In an accident investigation report authored by Union Paving, the "cause" of the accident was identified as: "[w]eight of the straight rebar on top of the rebar cage caused the cage to shift, which in effect caused it to roll . . . ." The report also stated the "preventive action" as: "[e]mployees were instructed to build cages on top of dunnage and use wedges to prevent rolling," and "DMJ's employees did not have any dunnage or wedges on the bottom of the rebar cage to prevent rolling."

The report also indicated that Union Paving offered an operator to assist in assembling the frame but DMJ declined the offer. Therefore, there were no Union Paving employees present or assisting DMJ at the time of the accident.

DMJ's authored incident report described the cause of the accident as, "[i]nsufficient ground preparation and precautionary bracing of cage to prevent rolling/shifting." DMJ's report also noted to "add a chock underneath the cage to prohibit the possibility of any unwanted movement." Plaintiff contends that Union Paving failed to ensure DMJ created its own Safety and Health Plan.

A-0115-19T2

Following plaintiff's accident, the Bayonne police arrived at the scene and notified OSHA.[2] An investigation was conducted by OSHA against DMJ but not Union Paving. Plaintiff sued Union Paving alleging negligence. Union Paving filed a motion for summary judgment.

After hearing arguments, the Law Division judge granted Union Paving's motion for summary judgment on August 2, 2019. In his written opinion, the judge found Union Paving employees were not assisting DMJ at the time of plaintiff's accident, "nor were they even allowed to." The judge noted, "[i]t was unforeseeable that [p]laintiff would fail to properly use dunnage or wedges on the bottom of the rebar cage to prevent rolling, as he had previously done in the past. Therefore, it was not foreseeable that [p]laintiff would fail to do so here."

The judge stated plaintiff was a "well-trained, experienced ironworker" who was "familiar with 'chocking.'" Citing Muhammad v. N.J. Transit, 176 N.J. 185, 199 (2003), the judge concluded Union Paving "did not have a duty to protect DMJ from a hazard created by the performance of the contract work, and

---

[2] Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651 to 678.

should be absolved of any liability."  A memorializing order was entered and this appeal ensued.[3]

On appeal, plaintiff argues that the trial court erred in granting summary judgment to Union Paving because as a general contractor, Union Paving owed a non-delegable duty to subcontractor employees to assure safe work practices.

## II.

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  R. 4:46-2(c).  Under Brill, "a determination [of] whether there exists a 'genuine issue' of material fact that precludes summary judgment requires the [court] to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party."  142 N.J. at 540.

---

[3]  On August 14, 2019, plaintiff executed a stipulation of dismissal without prejudice as to the remaining claims against DMJ.

Because "appellate courts 'employ the same standard [of review] that governs the trial court[,]'" we review these determinations de novo, and the "trial court rulings 'are not entitled to any special deference.'" Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010) (alteration in original) (citations omitted).

Plaintiff argues that Union Paving retained control over the subcontractors at the site. The expert report submitted by plaintiff's expert, Howard Tepper, opined that Union Paving "violated numerous OSHA regulations" and standards applicable to a general contractor on a multi-employer worksite. Tepper also opined that Union Paving failed to properly inspect and monitor the delivery of the steel and breached its duty to ensure subcontractors, such as DMJ, were proceeding pursuant to a Site Specific Safety Plan.

The immunity of a general contractor or landowner "[is not] disturbed by the exercise of merely such general superintendence as is necessary to insure that the []contractor performs his agreement . . . ." Muhammad, 176 N.J. at 199 (alterations in original) (quoting Wolczak v. Nat'l Elec. Products Corp., 66 N.J. Super. 64, 71 (App. Div. 1961)); accord Tarabokia v. Structure Tone, 429 N.J. Super. 103 (App. Div. 2012). Liability is "not warranted where the . . . 'supervisory interest relates [only] to the result to be accomplished, not to the

means of accomplishing it.'" Mavrikidis v. Petullo, 153 N.J. 117, 135 (1998) (second alteration in original) (quoting Majestic Realty Assocs., Inc. v. Toti Contracting Co., 30 N.J. 425, 431 (1959)).

Even under plaintiff's version of events, Union Paving did not control the means or methods of DMJ's work. No evidence shows Union Paving instructed plaintiff or DMJ personnel on rebar installation and caisson frame assembly. To the contrary, the record is clear that the subcontract between the parties fully delegated the work to DMJ, who was required to furnish labor, materials, and "competent supervision."

Thus, Union Paving did not engage in "direct interference which proximately cause[d] injury to the employees of the subcontractor." Wolczak, 66 N.J. Super. at 71; see Muhammad, 176 N.J. at 197. We recognize that if a general contractor or landowner generally retains control of the manner and means of doing the work, he "is responsible for the negligence of the independent contractor even though the particular control exercised and its manner of exercise had no causal relationship with the hazard that led to the injury . . . ." Mavrikidis, 153 N.J. at 135. As set forth above, Union Paving did not retain such control. Plaintiff has failed to proffer any evidence that Union Paving exercised control over plaintiff or DMJ's work.

A-0115-19T2

An employer that hires an independent contractor is not liable for the negligent acts of the contractor in the performance of the contract.  Bahrle v. Exxon Corp., 145 N.J. 144, 156 (1996).  The principal is not vicariously liable for the torts of the independent contractor if the principal did not direct or participate in them.  Baldasarre v. Butler, 132 N.J. 278, 291 (1993).  "[W]here a person engages a contractor, who conducts an independent business by means of his own employees, to do work not in itself a nuisance . . . he is not liable for the negligent acts of the contractor in the performance of the contract."  Majestic Realty, 30 N.J. at 430-31.  As set forth above, Union Paving did not retain such control.

As aptly pointed out by the judge, plaintiff's accident was "proximately caused by DMJ's failure to properly secure the caisson frame with dunnage or other chocking material," and "the means and methods of performing the DMJ [w]ork were delegated to DMJ under the parties' [s]ubcontract."  Accordingly, Union Paving is not liable under Muhammad.

Finally, plaintiff asserts Union Paving failed to create a Site Specific Safety Plan to address the construction of the caisson frames.  In his report, plaintiff's expert surmised that Union Paving was a "creating employer," a

"correcting employer," a "controlling employer," and an "exposing employer," as defined by OSHA. We are unpersuaded by plaintiff's argument.

Here, there was no evidence that Union Paving committed any OSHA violations. Indeed, OSHA conducted an investigation of DMJ and declined to investigate Union Paving. The record supports the judge's finding that Union Paving hired Leading Edge, Safety & Health Department to perform a "safety inspection" at the jobsite. Accordingly, Union Paving is not liable. Therefore, the judge properly granted Union Paving's motion for summary judgment.

We conclude that plaintiff's remaining arguments—to the extent we have not addressed them—lack sufficient merit to warrant any further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0115-19T2